91 161
114 372

DOUGHERTY, *Appellant*, v. HARSEL.

1. **Fraudulent Conveyance:** VALUABLE CONSIDERATION: EQUITY. In an action by a creditor to set aside a conveyance of land, made by the debtor to a son, as being voluntary and in fraud of creditors, it appeared that the debtor, when in affluent circumstances, and out of debt, promised his son if the latter would improve and make a farm on the land in controversy, it should be his, and he should have a deed for it; that the son entered, cleared off the land,

planted an orchard, and made other improvements on it; *held*, that the deed was not voluntary, but was made for a valuable consideration, and one which it was the duty of the debtor to make, and which a court of equity would have decreed him to make, had he refused to do so.

2. **Donation of Land** : WHEN EQUITY WILL NOT ENFORCE. ·An agreement for the gift of lands will not be enforced against the donor upon mere proof of the promise to give, whether it be oral or written. So long as the obligation is executory, and rests only on the declarations and promises of the donor, he may revoke it, and equity will not compel its performance.

3. ————: WHEN EQUITY WILL ENFORCE. But, when the promise has been accepted, in good faith, and the donee, on the strength of it, has changed his condition, entered into possession of the land, made valuable and permanent improvements, incurred obligations, and expended time, labor, and money, on account thereof, it becomes an agreement for a valuable consideration, and equity will compel the promisor to keep his promise and make the conveyance.

4. **Statute of Frauds.** Such acts of the donee take the promise, where it is not in writing, out of the operation of the statute of frauds.

*Appeal from Clay Circuit Court.* — HON. GEO. W. DUNN, Judge.

AFFIRMED.

*Simrall & Sandusky* for appellant.

(1) After the execution of the deeds of gift to his children, Anthony Harsel was insolvent, and his deeds were fraudulent as to existing creditors. "The solvency required by the law, as essential to protect a voluntary conveyance, consists not only in the present ability of the debtor to pay his debts, but in such a condition of his means that payment can be enforced by law." *State ex rel. O'Bryan v. Koontz,* 83 Mo. 323 ; *Patten v. Casey,* 57 Mo. 118 ; Bump on Fraud. Con., 298, 299, 292, 293, 294. (2) Limitation began running from the filing of the fraudulent deed for record. *Rodgers v. Brown,* 61 Mo. 187. The commencement of an action before

that date was prevented by the "improper act" of defendant. R. S., sec. 3244; *Wells v. Halpin*, 59 Mo. 92; 61 Mo. 187, *supra*. (3) Anthony Harsel, remaining in possession, and apparent ownership, obtained credit upon the faith that he was the owner of the lands in controversy; the respondent and his assignor of the note were misled and defrauded by the manner in which the premises were held and controlled, and by the grantee's neglect in demanding a deed, and filing it for record. *Bank v. Houseman*, 6 Paige [N. Y.] 537; *Rucker v. Abell*, 8 B. Mon. 566; *Webster v. Withey*, 25 Me. 326; *Hildeburn v. Brown*, 17 B. Mon. 779; *Savage v. Murphy*, 34 N. Y. 508; *Shand v. Hauley*, 71 N. Y. 319; *Hildreth v. Sands*, 2 Johns. Ch. 35; Bump on Fraud. Con. 324, 322. (4) A deed may be wholly or partially voluntary. Bump on Fraud. Con., 303. The grantee is entitled to compensation for improvements. Bump on Fraud. Con., 574, 575.

*D. C. Allen* for respondent.

(1) Where one, in pursuance of, and on the faith of, an oral promise of the owner that he shall have a deed for land, enters into possession thereof and makes valuable improvements thereon, the case is taken out of the statute of frauds, and he is entitled to a decree for specific performance. The evidence clearly shows that the respondent in this case was entitled to a decree for specific performance, years prior to the execution of the note by Jones and Captain Harsel to Mr. Litchfield, September 4, 1873. *Halsa v. Halsa*, 8 Mo. 303; *West v. Bundy*, 78 Mo. 407; *Anderson v. Shockley*, 82 Mo. 250, and cases cited on page 255; *Hughes v. Hughes*, 54 Ga. 173; *Porter v. Allen*, 54 Ga. 623; *Jones v. Mitchell*, 59 Ga. 136. In the purview of equity, under the facts in this cause, respondent was the real owner of the land prior to September 4, 1873, and the chancellor would

have decreed a conveyance. The title—the *dominium*—
had already passed to respondent, and a deed would
have simply been evidence of what was agreed to, and
ought to have been done. (2) Among respondent's pleas
is this: That he entered into full possession of the
lands in 1860, twenty-three years prior to institution of
suit on the note, and twenty-two years prior to the insti-
tution of this suit, and had ever since been in the open,
notorious, peaceable, adverse, exclusive, continuous,
and beneficial possession thereof, etc. This plea is fully
sustained by the evidence, and the findings of the court
and jury. Upon the facts, without reference to respond-
ent's equities, as presented in his first point, all title of
Captain Harsel, and of all persons who could claim un-
der him, was extinguished, and respondent was, long
before this suit was brought, the owner of the lands in fee.
*Ridgway v. Holliday*, 59 Mo. 444, and cases cited on
page 453; *Key v. Jennings*, 66 Mo. 356; *Fulkerson v.
Mitchell*, 82 Mo. 13. (3) The evidence shows that re-
spondent was entitled to a deed prior to September 4,
1873, and the deed, when executed, May 26, 1874, related
back to the time when he was entitled to a deed from
his father. *Gaylord v. Insurance Co.*, 40 Mo. 18; *Hartt
v. Rector*, 13 Mo. 497; *Lucky v. Seibert*, 23 Mo. 85;
*Mitchell v. Handfield*, 33 Mo. 431; *Jackson v. Ball*, 1
Johnson's Ch. 81; s. c., 2 Cai. Ch. 301; *Johnson v.
Stagg*, 2 Johns. Ch. 510; *Jackson v. Raymond*, 1 Johns.
Ch. 85*n; Powers v. Hurmert*, 51 Mo. 136; *Slagel v.
Murdock*, 65 Mo. 522. (4) The deed made to respondent
by Anthony Harsel, May 26, 1874, was not a voluntary
conveyance, but a conveyance made in pursuance of an
agreement (entered into prior to September 4, 1873),
which respondent was entitled to have executed, and
which equity would have compelled Anthony Harsel to
execute. Bump on Fraud. Con. 279; *Despani v. Car-
ter*, 21 Mo. 336. (5) The court below found the deed to

respondent was not fraudulent, and the evidence was ample to support the finding.

NORTON, C.. J.—On the fourth of September, 1873, James N. Jones, with Anthony Harsel, executed and delivered to A. T. Litchfield, their note for eight hundred and fifty dollars, payable in ninety days. On the first of August, 1879, this note was assigned to John A. Dougherty, who, on the thirteenth of January, 1883, instituted suit thereon in the Clay county circuit court, and on the eighth day of March, 1883, recovered judgment thereon for $1,456.32. Failing to make the money on execution, Dougherty instituted this suit in the said circuit court, on the sixth day of December, 1883, against defendant, John Harsel, to set aside a certain deed made to him by Anthony Harsel, his father, on the twenty-sixth day of May, 1874, conveying to him one hundred and sixty acres of land, in Clay county, particularly described in the petition, and praying that said land be subjected to the payment of his debt. The deed is assailed on the alleged ground that it is a voluntary conveyance, made in fraud of creditors, and that, at the time it was made, Anthony Harsel was insolvent. Upon a trial had, the court found for defendant and dismissed the bill, and from this action of the court plaintiff has appealed.

It appears, from the record, that Anthony Harsel came to Clay county in 1826, and up to 1860 had acquired a landed estate of about seven hundred and sixty acres, and was, at that time, in affluent circumstances and out of debt; that, in that year, he promised the defendant, who is his son, then twenty years of age, that if he would improve and make a farm on the land in controversy, it should be his, and that he would make him a deed when demanded. The evidence of Anthony Harsel, who was eighty-one years old at the time he testified, and the evidence of defendant and other witnesses,

tended to show that, in pursuance of this promise, defendant went to work on the land in 1860, cleared two and a half or three acres, cut out a fence row, built one quarter mile of fence and made some rails; that, during the war, defendant entered the service and did not return till 1865 or 1866; that, in 1866 or 1867, defendant resumed work on the land, under the promise that the land should be his, and that his father would make him a deed when demanded; that, in one or the other of these years, he cleared three or four acres, on which he set out an orchard of one hundred and fifty apple trees, twenty pear trees, and thirty peach trees; that, in 1868, defendant cleared twenty acres of heavy timbered land, and that it required six or seven thousand rails to fence it; that, in 1869, he cleared the brush off from forty acres and made ten thousand rails; that, in 1870, he built a corn crib and some out buildings; that during this time the defendant lived at the mansion of his father; that, in 1871, defendant married, and during that year, or the year 1872, built a granary, a hewn log smoke house, and a frame dwelling house, at a cost of from eight hundred to one thousand dollars, and in 1872 moved on the place and has occupied it ever since; that he also dug a well at a cost of two or three hundred dollars; that after such occupancy he continued to make other permanent improvements on the land.

Defendant testified that he had no knowledge of the existence of plaintiff's debt till suit was brought on it in 1883; that he did not call on his father for a deed till in 1874, because he had confidence in him, and believed that he would comply with his agreement when called on. The evidence also tends to show that, in 1867, the claim of defendant to this land was somewhat notorious in the neighborhood, and, also, that, in 1867, Anthony Harsel, who was suffering from palsy, and not involved in debt, concluded to divide his remaining land among his four other children, on the condition that they would

take care of him and his wife as long as they lived, and raise, feed, and care for his stock ( which he retained ) and pasture them ; that the parcels for each of the children were designated, though not surveyed till 1872, when the parties interested procured a surveyor and had the lines run off and the corners established ; that deeds were made to these children, respectively, on the twenty-sixth day of May, 1874, pursuant to the above agreement, three of which, one to defendant, one to Thomas, and one to Joseph Harsel, were filed for record in 1876 ; the deed to Peter Harsel was filed for record in 1884, and the deed to Mary F. Dryden, a married daughter, in 1880. At the time these conveyances were made, according to the finding of the jury to whom the questions were referred, Anthony Harsel owed, including plaintiff's debt, fourteen hundred and twenty dollars, and, aside from the property conveyed, owned fourteen hundred and eighty dollars of personal property and five hundred dollars worth of real estate. The evidence would have justified the jury in finding that the personal property owned by him was worth over two thousand dollars, and the real estate worth seven hundred and fifty dollars. These facts are, however, unimportant to a proper disposition of the case, inasmuch as, under the evidence, we do not regard the deed in question as being voluntary, but as one made for a valuable consideration, and which, under the facts in evidence, it was the duty of Anthony Harsel, and which a court of equity would have decreed him to make had he refused to make it. *West v. Bundy,* 78 Mo. 407 ; *Anderson v. Schockley,* 82 Mo. 250, and cases cited.

At the time the debt to plaintiff was contracted, defendant, in equity, was entitled to a deed, and in the eye of the chancellor the land was then his. The facts in evidence, above detailed, bring the case within the operation of the principles enunciated in the above cited cases, where it is held that an agreement for the gift of

lands will not be enforced against the donor, upon mere proof of the promise to give, whether it be oral or written. As long as the obligation is executory and rests only on the declarations and promises of the donor, he may revoke it, and equity will not compel its performance. But when the promise has been accepted in good faith, and the donee, on the strength of it, has changed his condition, entered into possession of the land, made valuable and permanent improvements, incurred obligations and expended time, labor, and money on account thereof, equity will compel the donor to keep his agreement and perfect the gift. Under these circumstances it is held that such acts of the donee take the promise, where it is oral, merely, out of the operation of the statute of frauds. And whether the promise be written or oral it ceases, under the circumstances above detailed, to be any longer a voluntary agreement; such aforesaid acts of the donee constituting a valuable consideration to support the promise and call for its enforcement.

Giving force and efficacy to these principles, which have been established law in this state since the case of *Halsa v. Halsa*, 8 Mo. 303, we hereby affirm the judgment, in which all concur.