# SUPREME COURT

## OF

## THE STATE OF MISSOURI

### AT THE

### APRIL TERM, 1888.

---

## ANDERSON, *Appellant*, v. SCOTT.

1. **Equity**: AGREEMENT TO GIVE LAND, WHEN NOT ENFORCED. An agreement for a gift of land will not be enforced against the donor upon proof alone of the promise to give, and this is true whether the promise be an oral one or in writing. So long as the obligation rests alone upon the promise of the donor, he may revoke it and equity will not compel a performance.

2. ———— : ———— : PART PERFORMANCE. But where the donee has accepted the promise, entered into possession of the land, made improvements on the faith of the promise, and thus changed his condition, the donor will be required to make good his gift. Such a state of facts will take the case out of the statute of frauds.

3. ———— : ————. As between a father and son, or a son-in-law, possession of the land alone is not sufficient to entitle the donee to specific performance.

4. ———— : ————. A promise by one since deceased to a son-in-law of a gift of certain land on condition that he would buy an adjoining tract, which he bought, and on which he made improvements, will not be specifically enforced in equity, it appearing that the son-in-law had the use of the promised land, but made no improvements thereon, and there being no proof that the improvements on the purchased land were made on the faith of the promise of the gift.

(637)

*Appeal from Pettis Circuit Court.*—Hon. J. P. Strother, Judge.

Reversed and remanded.

*G. P. B. Jackson* for appellant.

(1) The parol contract or promise relied upon must be alleged with certainty, and must be clearly proven as alleged, by convincing evidence, so that there is no ambiguity or doubt. Loose statements in casual conversation are not sufficient to prove the promise. *Sitton v. Ship*, 65 Mo. 297; *Berry v. Hartzell*, 91 Mo. 132; *Ackerman v. Fisher*, 57 Pa. St. 457. In the case at bar, the allegations of the answer are not definite as to the supposed promise, while the evidence is so vague as to leave us in doubt whether any promise was ever made at all, and if any was made, it was the statement of a mere intention. (2) No matter how clearly it may be proved, an agreement for the gift of lands, whether written or verbal, will not be enforced without the proof of acts done on account of it. As long as the obligation is executory and rests only upon the declarations and promises of the donor, he may revoke it, and equity will not compel him to fulfill it. *Hagar v. Hagar*, 71 Mo. 610; *West v. Bundy*, 78 Mo. 410; *Dougherty v. Harsel*, 91 Mo. 161–67. In this case, it is not shown that anything was done on account of any supposed promise of Anderson. (3) The acts relied on to take the parol promise out of the statute of frauds must refer to the promise, and must result from and be done in pursuance of it, and must be such as could not reasonably be imputed to any other circumstance. Cases *supra;* *Phillips v. Thompson*, 1 Johns. Ch. 131. Here nothing was done that could not reasonably have been as well done without a promise of a gift as with it. (4) The

ground upon which equitable jurisdiction is exercised in enforcing parol agreements relating to real estate, is to prevent a fraud being practiced, by invoking the statute of frauds. *Freeman v. Freeman*, 43 N. Y. 34; *Anderson v. Shockley*, 82 Mo. 250; *Temple v. Johnson*, 71 Ill. 13. In this case, there is no injury or fraud upon the defendant, if the alleged promise is not enforced. (5) In a case of gift from parent to child, the fact of possession alone is not sufficient. *Eckert v. Eckert*, 3 Pen. & Watts [Pa.] 332; *Pinckard v. Pinckard*, 23 Ala. 649; *Ackerman v. Ackerman*, 24 N. J. Eq. 315, 585; *Poorman v. Kilgore*, 26 Pa. St. 365; *Cox v. Cox*, 26 Pa. St. 375; *Harris v. Richey*, 56 Pa. St. 395; *Bright v. Bright*, 41 Ill. 97; *Galbraith v. Galbraith*, 5 Kan. 402; *Mims v. Lockett*, 33 Ga. 9; *Gwynne v. McCauley*, 32 Ark. 97; Browne on Stat. Frauds, sec. 467; Pomeroy Spec. Perf., sec. 130. It must further appear that there has been a change in condition of life; that money and labor has been expended in the improvement of the particular property, etc., in pursuance of the promise, under such circumstances as would operate a fraud on the promisee, if it were not enforced. *West v. Bundy, supra; Sutton v. Hayden*, 62 Mo. 101. None of these things exist in this case.

*G. W. Barnett* for respondent.

(1) The parol contract or promise relied on in this case is alleged with certainty, and clearly proved. The proof does not rest alone in loose statements in casual conversation, but defendant acted on the statements made, and altered his situation in life, by abandoning his home on the Woods farm, by purchasing the bank eighty acres, by taking possession of both of the tracts at the same time, and by making improvements and paying the taxes on the tract in dispute. And, further, deceased, in addition to his repeated statements that he had given

the land to defendant, directed it to be assessed to him.
In addition to this, the acts of both parties were such as
to lead the public to recognize and treat this as defend-
ant's property. We, therefore, insist that these facts are
sufficient to take the transaction out of the statute of
frauds. *Desplain v. Carter*, 21 Mo. 331; *Sitton v.
Shipp*, 65 Mo. 297; *Paris v. Haley*, 61 Mo. 453; *Sutton
v. Haydon*, 62 Mo. 101; *West v. Bundy*, 78 Mo. 407,
*Anderson v. Shockley*, 82 Mo. 250; *Young v. Mont-
gomery*, 28 Mo. 604; *Neale v. Neale*, 9 Wall. 1; *Kurtz
v. Hibner*, 55 Ill. 514; *Langston v. Bates*, 84 Ill. 524;
1 Story's Eq. Jur. [11 Ed.] sec. 763, p. 816; *Nivens v.
Belknap*, 2 Johns. 572; *Dickerson v. Chrisman*, 28 Mo.
134. (2) The act of taking and holding possession is
such performance as will take the transaction out of the
statute of frauds, where, as in this case, he takes pos-
session as the owner, and where he would not have taken
possession had he not considered himself in that light.
*Desplain v. Carter*, 21 Mo. 335, 336; *Neale v. Neale*, 9
Wall. 1; *Nivens v. Belknap*, 2 Johns. 587; *Young v.
Montgomery*, 28 Mo. 604. Possession alone is sufficient,
if it is such possession as is only consistent with the
contract claimed, and such possession that no other
hypothesis would be able to account for it. *Sitton v.
Shipp*, 65 Mo. 298.; 1 Story's Eq. Jur. [11 Ed.] sec. 763.
(3) In equity cases, the appellate court will defer much
to the opinion of the chancellor below, and will not dis-
turb the decision except in cases free from doubt.
*Chouteau v. Allen*, 70 Mo. 336; *Erskine v. Lowenstein*,
82 Mo. 301: *Sharpe v. McPike*, 62 Mo. 300; *Berry v.
Hartsell*, 91 Mo. 132; *Cornet v. Bertelsman*, 61 Mo. 126;
*Judy v. Bank*, 81 Mo. 410; *Bayle v. Jones*, 78 Mo. 403;
*Wilson v. Maxwell*, 57 Mo. 147. (4) While it must
clearly appear what is the contract sought to be enforced,
yet the certainty need only be a reasonable one, satisfac-
tory to the court in regard to the subject-matter of the

contract and the circumstances under which it was entered into. *Paris v. Haley,* 61 Mo. 458; *Neale v. Neale,* 9 Wall. 1.

BLACK, J.—This was an action of ejectment commenced in April, 1881, for one hundred acres of land in Pettis county. Prior ownership in George Anderson is conceded, who, by his last will, dated the nineteenth of December, 1879, and probated in March, 1880, devised the land to his widow, the plaintiff in this suit. Defendant married a daughter of the plaintiff and her deceased husband. By way of an equitable defence, he sets up in his amended answer that Anderson requested him to purchase an adjoining eighty-five acres from the Sedalia Savings Bank; that Anderson promised to give him the hundred acres in suit if he would buy and build upon the eighty-five acres; that he did buy and build upon the eighty-five acres; that at the time he took possession of the eighty-five acres Anderson gave him possession of the hundred acres, and promised to make him a deed as soon as he, Anderson, got a conveyance of the land from Mills, in whom the legal title was then vested.

Anderson had purchased this and other lands, in all, three hundred acres, from Mills, but did not get a deed therefor until shortly before his death. The deed bears even date with the will, the nineteenth of December, 1879. Defendant, or defendant and Mr. Anderson, purchased the eighty-five acres from the bank in 1877 or 1878, and the deed therefor was made to the defendant in April, 1879. At the time of the purchase the defendant took possession, built a house, barn, and made some other improvements on the eighty-five acres purchased of the bank. He, at the same time, took possession of the hundred acres and continued in the possession thereof to the commencement of this suit, but it does

not appear that he made any improvements on that tract.

Mr. Scott, the former assessor, testified: "I don't remember that Mr. Anderson ever gave in the land, but instructed me to assess it to Nick Scott, the defendant, and said either that he had given it to Nick's wife, or was going to give it to her, and defendant went into possession the next fall or spring. Anderson instructed me to assess this hundred acres and twenty acres of timber to defendant. I have no recollection of what year it was he said this."

Leftwich says he had a conversation, date not given, with Anderson, which he relates as follows: "I met him near the land. I asked him why he didn't build on that hundred acres a tenement house and rent it; he said he had given it to his daughter Mary; said he had told Nick that if he would buy that eighty-five acres from the bank he would give him the hundred acres; that it would make him and Mary a nice little farm, and he said: 'I have done it;' I think it will be eight years next spring. Nick was not in possession then, but commenced improving that spring."

Another witness says Anderson told him he had given the hundred acres to Mary, the defendant's wife, but the date of this conversation is not given. A Mrs. Major says a short time after the defendant was married Anderson told her he had given another daughter money to build a house, and intended to settle defendant and his wife on the hundred acres. She also states: "Afterwards he told me that he told Nick if he would buy the bank land he would give him the hundred acres; he said that Nick had bought the bank land; he said he intended to give the hundred acres and wanted him to build on it, but Nick thought it would be too near the corner. Nick did not build on the hundred acres, but on the bank land."

Mr. Thompson, the president of the bank, says he had a conversation with Anderson some six months before the latter's death ; that they were then fixing up matters about the sale of the eighty-five acres. Witness says : "The arrangement was made with Anderson ; he said he intended to give Nick the hundred acres adjoining the eighty-five acres, and he wanted to buy this eighty-five acres for Nick ; we held the eighty-five acres at about sixteen hundred dollars, and my recollection is that Nick paid this off and Anderson directed the deed to be made to Nick, and I think it was so made ; I sold the eighty-five acres to Anderson at twenty dollars an acre. I didn't get any understanding about it ; I knew the money had been paid ; never saw anybody make the payment ; it was reported paid for ; I made the deed ; I was president of the bank ; our cashier received the money."

The other evidence shows that at the date of the purchase of the bank land defendant lived upon rented land ; that Anderson left a widow and eight children, and that he owned seven or eight hundred acres of land. The statement in the record is that he devised all of his property, real and personal, to his wife.

These principles of law have been settled by repeated adjudications of this court, namely : An agreement for a gift of land will not be enforced against the donor upon proof alone of the promise to give. This is true, whether the promise be oral or in writing. As long as the obligation rests alone upon the promise of the donor, he may revoke it, and equity will not compel a performance. But where the donee has accepted the promise, entered into possession of the land, made improvements upon the faith of the promise, and thus changed his condition, the donor will be required to make good the gift. *Dougherty v. Harsel*, 91 Mo. 161 ; *Sitton v. Shipp*, 65 Mo. 297 ; *Hagar v. Hagar*, 71 Mo. 610 ; *West v. Bundy*, 78 Mo. 407. Such a state of facts

will also take the case out of the statute of frauds. *Anderson v. Shockley*, 82 Mo. 250. As between father and son or son-in-law, possession of the land alone, under the promise of a gift, is not sufficient to entitle the donee to specific performance. *Bright v. Bright*, 41 Ill. 97 ; Pom. on Spec. Perf., sec. 131.

Now in this case the evidence consists wholly of statements made by the deceased to third persons. Many of them in casual conversation, a most unsatisfactory character of evidence, especially when considering family disputes. These statements, too, tended more strongly to show an intention to give the land to the daughter than to the defendant. Mrs. Majors says Anderson told her that he wanted defendant to build on this land, but defendant thought the building would be too near the corner and did not build on it. Leftwich speaks of a gift to both the defendant and his wife. The conversation testified to by Mr. Thompson occurred, but three months before the date of the will and six months before Anderson died, and it is clear that at that time Anderson only contemplated making a gift at some future day. The witness says Anderson told him that he intended to give the hundred acres to defendant, but this statement must be considered in connection with the other evidence. The reason assigned by one witness for giving this land to defendant and his wife was, that Anderson had given another daughter money to build a house, but how much does not appear. We are satisfied that the only gift ever contemplated as proposed was one of the land to the defendant's wife, and such a gift is not pleaded.

But suppose we are in error in this conclusion and that Anderson did propose and offer to give the one hundred acres to defendant as soon as he got a deed if the defendant would buy and build upon the eighty-five acres, the question then is whether there exists such a state of facts as would render a failure to complete the

donations inequitable and unjust. Two witnesses say the defendant used the land since the spring of 1877, but this, we have seen, will not suffice. One witness says Anderson told him to assess the land to the defendant, but it does not appear that it was so assessed, nor does it appear that defendant ever paid one cent of taxes on this one hundred acres. He had the use of it, but it does not appear that he put any improvements upon it whatever. The improvements were placed wholly upon the eighty-five acres, the deed to which was, by the direction of Mr. Anderson, made to defendant ; and we may say here that the evidence rather tends to show that Mr. Anderson paid for the eighty-five acres, at least assisted in making the payments. Mr. Thompson says the arrangement for the sale of the land was made with Anderson ; that the land was sold to Anderson at twenty dollars per acre, and Anderson directed the deed to be made to defendant. He says it is true defendant paid off the sixteen hundred dollars, but it seems he did not know by whom the money was furnished.

Without the land in suit the defendant retains all the improvements he has made. His changed condition from a renter of the Wood farm to owner of the eighty-five acres was no detriment to him, and, it is believed, no inconvenience. He has not only got the compensation for all of his outlays, but we are satisfied those outlays were not made by him in consequence of or in reliance upon a gift of the one hundred acres, but that they were made in consequence of the purchase of the eighty-five acres. Under such circumstances courts of equity do not give specific performance of a gift. The expenditures to be of any avail must have been made on the faith of the gift. Pom. on Spec. Perf., sec. 131. Conceding, therefore, that there was a parol promise to give the land in question to defendant upon the conditions specified in the answer, still the defendant has not

·made out a case entitling him to any relief at the hands of a court of equity, nor entitling him to withhold the land from the plaintiff.

The judgment is, therefore, reversed and the cause remanded. Ray, J., absent. The other judges concur.