BROWNLEE, *Appellant*, v. FENWICK *et al.*

DIVISION TWO.

1. **Witness:** HUSBAND AND WIFE.    A husband, joined as defendant in a suit concerning his wife's land, is a competent witness whereby the *jus mariti* he has the possession and enjoyment of the property.

2. **Statute of Frauds:** PART PERFORMANCE, EVIDENCE OF.    The evidence of an oral contract, to take it out of the statute of frauds on the ground of part performance, must be clear, definite and certain.

3. ——— : ———. Evidence of loose declarations and admissions of a decedent by whom the contract to convey is charged to have been made is insufficient.

4. **Gift of Land : SPECIFIC PERFORMANCE.** An agreement for a gift of land will not be enforced against the donor upon proof alone of the promise to give, and this is true whether the promise be in writing or an oral one. So long as the obligation rests upon the promise of the donor he may revoke it and equity will not compel a performance. (*Anderson v. Scott*, 94 Mo. 637.)

5. **Injunction : ATTORNEY'S FEES : DAMAGES.** Attorney's fees are allowed defendant as damages on the dissolution of an injunction, although no formal motion to dissolve the injunction is made, and notwithstanding such motion, if made, is tried at the same time with the trial of the cause on its merits.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Samuel Boyd* for appellant.

(1) Appellant insists that the evidence shows beyond any reasonable doubt that a contract was made in 1869 between plaintiff and his father, whereby plaintiff agreed to take care of his father and mother during their lives; and that, in consideration thereof, he was made to have the immediate possession of the farm in controversy and have the use and occupancy of it during the life of his father and mother, and, when they were dead, to have the full title of the land; and that plaintiff fully performed his part of the agreement; and that no deed or will was ever made by his father, giving him the full title to the land as was agreed; and that the plaintiff is entitled to have said contract specifically performed. 3 Pomeroy's Equity, p. 456, sec. 1409; *Farrar v. Patton*, 20 Mo. 81; *Anderson v. Shockley*, 82 Mo. 250; *Dickson v. Chrisman*, 28 Mo. 134; *Townsend v. Hawkins*, 45 Mo. 286; *Paris v. Haley*, 61 Mo. 453; *West v. Bundy*, 78 Mo. 407; Greenl. Ev.

[ 13 Ed.] sec. 47, pp. 56, 57. ( 2 ) The defendants, G. A. Pettit, John Herndon, Larkin Reynolds, were incompetent as witnesses, and should not have been permitted to testify. Their wives were defendants and the real parties in interest. They had no interest, and it is not pretended they were acting as agents for their wives. Their wives had never been seized of the land. Witness, Fenwick occupied the same position, and was incompetent to testify to any fact occurring prior to his becoming administrator. Witness Jones was also incompetent; his children were parties, claiming as heirs of their mother, who died after the death of her father, Andrew Brownlee. *Wood v. Broadley*, 76 Mo. 23 ; *Paul v. Leavitt*, 53 Mo. 595 ; *Hearl v. Krien*, 65 Mo. 202. ( 3 ) The court erred in allowing damages to defendant Fenwick, upon the dissolution of the injunction. The principal purpose of this action being to adjudicate the question of title, and no motion to dissolve the injunction ever having been made, the allowance of counsel fees was improper. High on Injunction [ 2 Ed.] sec. 1686.

*Scott & Cooney* for respondents.

( 1 ) The evidence failed to prove any contract authorizing a recovery *Parkhurst v. Van Courtlandt*, 1 John. Ch. 282 ; *Mastin v. Halley*, 61 Mo. 196 ; *Underwood v. Underwood*, 48 Mo. 427 ; *Foster v. Kimmons*, 54 Mo. 488 ; *Paris v. Halley*, 61 Mo. 453. ( 2 ) The alleged contract is within the statute of frauds and the evidence of plaintiff was entirely oral and consisted of mere repetition of oral statements of what was said by the decedent to mere strangers in casual conversation. This was insufficient as a basis of a decree for specific performance. 1 Greenl. Ev. [ 12 Ed.] p. 229, sec. 200 ; *Purcell v. Coleman*, 4 Wall. 513 ; *Johnson v. Quarles*, 46 Mo. 423 ; *Underwood v. Underwood*, 48 Mo. 530 ; *Ringo v. Richardson*, 53 Mo. 385 ; *Kenedy v. Kenedy*,

57 Mo. 78 ; *Sitton v. Shipp*, 65 Mo. 297 ; *Tedford v. Trimble*, 87 Mo. 226. ( 3 ) There was no such part performance as took the case out of the statute of frauds. The plaintiff was living on the land with his father at the time the contract is alleged to have been made, and there was no such changed relations between the plaintiff and his father as comes within the meaning of the rule establishing an act of part performance. *Anderson v. Scott*, 94 Mo. 637 ; *Underwood v. Underwood*, 48 Mo. 527 ; *Price v. Hart*, 29 Mo. 171 ; *Spaulding v. Conzelman*, 30 Mo. 177. ( 4 ) Even if there ever was any such contract between the plaintiff and his father as that alleged in the petition, it was long ago waived or rescinded by the parties. The subsequent actions of the parties show this very conclusively. *Tolson v. Tolson*, 10 Mo. 736–740 ; *Fine v. Rogers*, 15 Mo. 315–321. ( 5 ) The husbands of deceased's daughters who were parties to the action and their wives were competent witnesses. Their marital rights in the property gave them such an interest as entitled them to testify on their own behalf, and it is immaterial that their testimony will necessarily affect their wives' interest also. *Steffen v. Bauer*, 70 Mo. 399 ; *Cooper v. Ord*, 60 Mo. 420 ; *O'Bryan v. Allen*, 95 Mo. 68. ( 6 ) The assessment of damages for attorney's fees on the injunction bond was proper. High on Injunctions [ 2 Ed.] sec. 1685 ; *Railroad v. Shepley*, 1 Mo. App. 254 ; *Buford v. Packet Co.*, 3 Mo. App. 159 ; 89 Mo. 611 ; *Hammerslough v. Ass'n*, 79 Mo. 80.

THOMAS, J.—This was a suit in equity to enjoin and restrain defendant William Fenwick from proceeding in an action of forcible detainer, instituted against plaintiff before Charles M. Hawley ; and to declare the title in real estate mentioned in the petition in the plaintiff on the ground that it had been given to him by his father years before, and had been in his possession for more than ten years. The same pleadings admit that, in

1869, one Andrew Brownlee was the owner of the land described in the petition; that plaintiff is a son of said Andrew Brownlee, and that plaintiff and the defendants (except defendant Hawley) are the heirs and legal representatives of Andrew Brownlee, who died intestate in the year 1885; that defendant Hawley is a justice of the peace, and defendant Fenwick is the administrator of said Andrew Brownlee, and that an action of forcible detainer was begun by said Fenwick, as administrator, before defendant Hawley, as justice of the peace, against plaintiff for the recovery of the possession of the land in controversy and was pending at the time of the institution of this suit.

The petition charged that the agreement made in 1869, between plaintiff and Andrew Brownlee, was that, in consideration of plaintiff staying upon the farm and taking care of his father and mother during their lives, he should occupy the land and have full use of it during their lives, and at their death have full title to the land. The answer charges the agreement of 1869 to have been, that plaintiff should live with his father upon the land, and pay annually one-third of the crop as rent, Andrew furnishing the work stock, etc., and further charges that he did so live upon the land until 1880, when a different and new contract of lease of said farm was made and, from that time until the death of said Andrew Brownlee, plaintiff occupied the farm under that lease. A temporary injunction was granted plaintiff restraining further proceedings under the forcible detainer proceeding.

I.   The daughters of decedent and their husbands were made defendants, and on the trial the husbands were permitted to testify over the objections of plaintiff. They were competent witnesses. They, having the right to possess and enjoy the property their wives inherited from their father, were not mere nominal but substantial parties to the suit, and, being such, they were competent witnesses in their own behalf.   *O'Bryan v. Allen,* 95 Mo. 68, and cases cited.

Objection was also made to the competency of Patan Jones as a witness on behalf of defendants. He was the husband of a deceased daughter, and was not a party to the suit, but his children were. There can be no question but that he was a competent witness.

II. The trial resulted in a judgment for defendants and a dissolution of the temporary injunction. This judgment was justified by the evidence introduced by the plaintiff alone, and, when the evidence introduced by defendants is taken into the account, the plaintiff's alleged cause of action appears to be wholly devoid of merit.

The evidence on the part of plaintiff shows : That, in 1869, Andrew Brownlee, speaking to his wife, at the residence on the farm in controversy, and in the presence of plaintiff and witness, Victoria Brownlee, said : " I want Darwin ( plaintiff ) to stay at home and take care of his mother and me, and I intend him to have this piece of land ; " that plaintiff had been married but a short time ; that plaintiff was in possession of this land and remained in possession until the present time ; that, in 1870, John Brownlee (a son of Andrew, and now deceased ) asked his father to sell him five or six acres off the land in dispute to square him out, and that Andrew replied, saying, "The land is not mine ; I have given it to Darwin ; "—this was said in the presence of witness, Matt Barnes ; that in 1876 witness French applied to Andrew Brownlee to rent of him ; that he said " the land belonged to Darwin, and he would have to go to him about it ; " that said French did go to plaintiff and rented the land and paid plaintiff the rent ; that in 1880, after Andrew Brownlee had conveyed all the land he ever owned except the land in dispute and a farm then occu-pied by his son John, he said to witness John Sweeny : " I have sold all the land I intend to sell ; the balance belongs to the boys; the home place belongs to Darwin."

That near the same time Andrew Brownlee said to witness, Merideth Marmaduke, that the land in controversy belonged to plaintiff; that he also told witness Huston, who, as county assessor, called on him to make out his assessment list, that he had no land. The evidence further shows that, in the neighborhood in which this land was situated, it had been a matter of notoriety for twelve to fifteen years, that plaintiff was in possession of the land, claiming it as his own, and that it had been given him by his father. The evidence further showed ·that no rent and no part of the crop had ever been received or claimed by Andrew Brownlee from 1869 to the time of his death, except the year 1874, when a part of the crop was given him by the plaintiff.

The old man on one occasion, when counting his money and when asked what he was going to do with it said : "I want to give it to the girls; I have given all the girls except Jones' wife $500 or $600, and I want to make her up even with the others, and the boys to have the land that is not sold." The old man had two sons, the plaintiff and John, and five daughters. John was dead at the time of the trial, and his heirs had sued these defendants for another part of the home tract. In 1880 the old man leased the whole home tract to plaintiff and one James F. Marshall. This lease included the property in controversy. In regard to this lease Mr. Marshall testified, that he insisted on having it reduced to writing. "The old man said : 'It does not matter a particle about this place ; all I want is for you to give Mrs. Brownlee (John's wife) a third of all the crop. It don't make a particle of difference about this place so far as I am concerned.' But I insisted on having writing and so we made that contract or instrument."

"Q. Did he claim title to this land at the time he drew up this instrument? A. I asked him and told him I must have writing and he said 'for your benefit if you want writings I can give them to you, but it does not matter about this place.'

"*Q.* What did you pay as rent for this land? *A.* I gave him one-third and the balance was put together.

"*Q.* What did you do with the rent for the other place? *A.* I paid it to Mrs. Brownlee."

The wife of Andrew Brownlee died in 1874, and Andrew died in April, 1885, at the age of eighty-seven years. He lived on the place with plaintiff, but plaintiff did not show who furnished his groceries or clothing.

We think this testimony fails to show that the contract alleged by plaintiff was in fact made by his father. It was not proven, except by loose declarations and admissions of the deceased. These are insufficient unless corroborated by evidence of so cogent a nature as to leave no room for reasonable doubt in the mind of the chancellor, who heard the cause. "In order to take a case out of the statute [of frauds], upon the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite and referable exclusively to the contract; but the contract should also be established by competent proofs to be clear, definite and unequivocal in all its terms. If the terms are uncertain or ambiguous, or not made out by satisfactory proofs, a specific performance will not (as, indeed, upon principle it should not) be decreed. The reason would seem obvious enough, for a court of equity ought not to act upon conjecture; and one of the most important objects of the statute, was to prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn written contracts." 1 Story Eq. Jur. [12 Ed.] sec. 764; *Berry v. Hartzell*, 91 Mo. 132.

In this case the plaintiff did not prove *any contract* between him and his father. His father remarked to his wife that he wanted plaintiff to take care of him and her and he intended plaintiff to have the place. Afterwards he said to others that the place belonged to the plaintiff, but there is no evidence that plaintiff agreed

to do anything or was asked to do anything, or that he ever did do a thing for his father, except to live on the farm and let the old man live with him.. He made no improvements. He did not change his condition, so that it would be a fraud on him to refuse to enforce the alleged contract. According to his own testimony plaintiff received all the benefits, and in 1880 leased the farm of his father. It is plain that he never regarded this arrangement with his father as anything more than indicating an intent on the part of the latter to give him the farm by deed or will to take effect at his death. "An agreement for a gift of land will not be enforced against the donor upon proof alone of the promise to give. This is true whether the promise be oral or in writing. As long as the obligation rests alone upon the promise of the donor he may revoke it, and equity will not compel a performance." *Anderson v. Scott*, 94 Mo. 637.

Andrew Brownlee no doubt intended to give this land or a part of it at least to the plaintiff. This intent may have found expression occasionally in a promise to give but there was no consideration for the promise. Plaintiff had the farm, free of rent, and that more than compensated him for all he did for his father and mother. And this promise to give, if a promise to give can be inferred from the evidence, was certainly revoked in 1880, when the father leased the property to plaintiff and Marshall, and even if it had never been revoked it was not enforceable in equity, as is demonstrably shown by the authorities quoted. This is the view we take of this case as presented by the plaintiff, and it is so strengthened by the evidence produced by defendants that there can be no room to doubt about its correctness.

Defendants read in evidence the lease referred to by Marshall in his testimony :

"Andrew Brownlee has this day leased unto Darwin Brownlee and James Marshall, for a term of five years, from and after the first of March, next, 1881, the farm

upon which he now resides, and also the farm upon which Mrs. John Brownlee resides, upon the terms and conditions hereinafter stated. They are to take the farms as they are and to keep the fencing under good repair and leave them so; they are to deliver one-third of all the crops raised on the places, the wheat and oats in a half bushel at the machine, and the corn in the crib; that on Mrs. Brownlee's farm, too, for herself and children, she reserving her houses and orchards and small pasture for herself. They are to deliver the crops as they mature each year. They have the privilege of fencing a pasture on the outside of about twenty acres for their own use without any charge.

"The parties to this contract, accepting the conditions of the same as expressed above, have hereunto signed their names this twenty-fourth day of July, 1880.

"ANDREW BROWNLEE,
"JAMES F. MARSHALL,
"DARWIN BROWNLEE."

This lease had not expired when the old man died. Its stipulations are wholly inconsistent with the theory that the lessor had made the contract alleged by plaintiff. Defendant further proves that, in 1866, Andrew Brownlee sold land for $2,500, out of which he gave portions to his daughters, prior to 1869, as follows: To Mrs. Fenwick, $400; to Mrs. Reynolds, $500; to Mrs. Herndon, $400, and to Mrs. Pettit, $400. For the year 1869, he had personal property assessed to him valued at $980, which, no doubt, was actually worth much more, as property is scarcely ever assessed at its full value. In 1875, 1876 and 1877 he sold three pieces of land for $2,200 in the aggregate, and after 1869 he gave his daughters $870.

He paid a note of $125 for plaintiff, and he paid the taxes on the land from 1869 to 1880 and on the personal property from 1869 to 1883, inclusive, and taxes on the land were not paid after 1882. It does not appear who paid them for 1881. He often bought groceries for the

family. Plaintiff lived on the farm with his father prior to and at the time the alleged contract was entered into and has continued there ever since.

Thus we see Andrew Brownlee had from 1866 to 1877 at least $5,680. He gave his daughters $2,570, and the evidence does not disclose what became of the remainder, except the amount of the taxes and the $125 paid for plaintiff. It may, however, be reasonably inferred from the facts proved that plaintiff not only had the use of the farm and stock free of any charge whatever, but, also, consumed the old gentleman's surplus means in the support of his family. Indeed, it seems clear that the plaintiff did not take care of and support his father, but his father took care of and supported him.

III. When the injunction was dissolved, on motion of Wm. Fenwick, the administrator, the court assessed the damages occasioned by the injunction at $500—$400 for the rents of the farm, and $100 for fees paid counsel in defense of the injunction. It is insisted now, that it was error to allow anything for counsel fees on the ground that no motion to dissolve the injunction was made and the principal purpose of the action was to adjudicate the question of title, and in support of this proposition High on Injunctions [2 Ed.] section 1686 is, cited. It seems that in some of the states, notably in Iowa and Ohio, counsel fees cannot be allowed as damages, unless some action be taken in regard to the dissolution of the injunction, separate and apart from the defense on the merits, but this rule does not obtain in Missouri. Counsel fees are allowable in this state as damages on the dissolution of the injunction and that without regard to whether the injunction is the sole relief sought or only auxiliary to the principal object of the action, and without regard to whether a motion to dissolve is made formally or not. It is true our statute does provide that, "After the answer is filed, a motion may be made at any time in term to dissolve the

injunction, and upon such motion the parties may introduce testimony to support the petition and answer, and the court shall decide the motion upon the weight of testimony without being bound to take the answer as true." R. S. 1889, sec. 5505.

This statute is remedial in its nature. It was intended to abrogate the rule that obtained under the old chancery practice, that the defendant's answer as far as it was responsive to the allegations of the petition was for the purposes of a motion to dissolve to be taken as true. But while a defendant may, after filing his answer, move to dissolve the injunction, he is not bound to do it, but can wait and make his defense on the final trial, not only to the injunction, but also to any other matter involved in the action. This identical point was decided in the case of *Hammerslough v. K. C. Loan & Savings Ass'n*, 79 Mo. 80. There, as here, the answer was filed, but no motion to dissolve the temporary injunction was made. There, as here, $100 was allowed for counsel fees. MARTIN, C., said: "It is true that these services were assessed as covering the whole case and not in form as confined to a motion to dissolve. But a trial of the motion to dissolve must have brought up all the material issues of the case and rendered it necessary to dispose of the whole case on the motion." That language is precisely in point in the case at bar. Here plaintiff brought suit for specific performance of a contract for the conveyance of the land, and being in possession of the property in dispute he asked and obtained a temporary injunction restraining the administrator from prosecuting an action of unlawful detainer he had begun against him, until the court could adjudicate the question as to his right to it. The injunction had to fall or stand by the finding and judgment in regard to his title to the land. It would have been necessary to dispose of the whole case on the motion to dissolve if one had been filed.

In the case of *Buford v. Packet Co.*, 3 Mo. App. 159, a motion to dissolve was filed after the coming in of the answer but the whole case was heard and determined at the same time. The injunction was dissolved and counsel fees were allowed. In delivering the opinion of the court of appeals Judge LEWIS said: "The principle upon which counsel fees are allowed, upon dissolution of an injunction, does not rest upon a supposed increase of trial expenses created by the injunction. It is based upon the fact that defendant has been compelled to employ aid in getting rid of an unjust restriction forced upon him by the act of the plaintiff. * * * The policy of allowing counsel fees in cases like the present is fully recognized by this court without regard to whether the merits of the cause were ascertained on the motion to dissolve or otherwise." And on appeal to this court the opinion of the court of appeals was approved. 69 Mo. 611. Hence we deem the doctrine well settled in Missouri that fees paid counsel for defending against an injunction are allowable on the dissolution of the injunction, whether a motion to dissolve be made in form or not, or whether the motion to dissolve be tried prior to or at the time of the trial upon the merits of the case.

The case at bar, however, is somewhat different from the facts in the *Hammerslough case*. There no motion to dissolve was made and the injunction was not referred to in the answer, while here defendant's answer concludes with a prayer that the injunction be dissolved, which, as we take it, amounts to a motion to dissolve. In the case at bar the proof was that there was a defense against the injunction, and that defendants had agreed to pay counsel $300 for the whole case, and that $100 was a reasonable fee for the defense of the injunction. We hold, therefore, that the court committed no error in allowing counsel fees, and that the allowance of $100 was amply supported by the evidence. Finding no error in the record the judgment is affirmed. All of division number 2 concur.