### CROCKETT & RISQUE vs. MAGUIRE.

A. purchases land of B., and to defraud his creditors has the title made to C.   D. without notice of the fraud, acquires title under C.   Before the deed to D. is recorded, the land is sold by the sheriff under an execution against A., and the deed of the sheriff is recorded.

Held:—

1. That the registry of the sheriff's deed is not notice to D. of the fraud.

2. The registry of a deed is only notice to after purchasers from the same grantor.

## APPEAL from the St. Louis Circuit Court.

SPALDING *for Appellants.*

1. Where there is a deed fraudulent because made to hinder and delay creditors, and subsequent conveyances are made by the fraudulent grantor, and by the fraudulent grantee, the title will pass by the subsequent deed, which is first in point of time. 3 J. C. R. 371; Anderson vs. Roberts, 1 Day's Rep. 527, N. S.; Preston vs. Crafeet, 18 Johns. Rep. 515; Anderson vs. Roberts, on appeal, 15 Wend. 588. This is a case which is analagous in principle to the present, and the Court held the vendee bound to enquire whether the recorded sheriff's deed was *bona fide,* as against another deed recorded subsequently, but of prior date and execution.

2. That the application for a re-hearing was in time. See 2 Smith's Chancery Practice, 18, 26, 27. Showing that by the practice of the chanceller, several weeks were allowed. Here the time is not regulated by statute, nor by rule of Court. Till this is done, a re-hearing may be granted if applied for during the term wherein the decree is entered.

3. It is not too late to raise the question as to the legality of the proceedings at the hearing in the Court below.

*Crockett & Risque* vs. *Maguire.*

HAMILTON *for Appellee, contended:*

1. It is admitted that the appellee is a purchaser for a valuable consideration. On the point of notice, the case is clearly with him. The Court gave credit to the answer in preference to Collin's testimony, and its finding will be treated by this court with not less respect than the verdict of a jury, and will not be reversed upon a mere difference of opinion as to the weight or credability of evidence, upon a fact fairly submitted to it. No decree can be made against the answer, unless it be contradicted by two witnesses, or one witness and strong corroborating circumstances. 4 Mo. 62.

2. The recording of the deed from the sheriff to Neville previous to the conveyance by the trustee, and *cestui que trust* to Hubbard, is relied on by the complainants, in their bill; but a purchaser of land is not affected with constructive notice of any thing which does not lie within the course of his title, or is not connected with it. If he finds a good conveyance to his vendor, he is not expected to look further, much less is he bound by a deed out of that title, as in this case. 7 Watts 382; 10 Ohio 83; 1 John. C. R. 573; 14 Mass. 303; 16 Mass. 418. The recording of the sheriff's deed was only evidence of notice to after-purchasers under the same grantor.   14 Pick. 224. A *bona fide* purchaser for a valuable consideration, from a fraudulent grantee, without notice of the fraud, will hold the property against the creditors of the fraudulent grantor, and the purchaser from the fraudulent vendee is preferred to one who buys from the vendor. 5 Mo. 296.

3. Hubbard also purchased without notice, and no notice was proven against Arnout, the immediate grantor of the appellee. It is now settled that having taken the property in payment of a precedent debt, does not affect the right of a party to be considered a purchaser for value. 5 Mo. 296; 16 Peters 1; 11 Ohio 172.

4. If Hubbard or Arnout had no notice, the appellee may avail himself of that fact whether he personally had notice or not. 7 Cowen 360. So if the appellee had not notice, but the other parties had, the same rule will apply. 8 John. 137.

5. The appellants show no valid title to this title, for:

1st. The sale to Neville passed nothing, there being, in fact, no title in Wetherill upon which the judgment and execution could act. The title was then outstanding. Neville at most, acquired but a mere equity, authorizing him to pursue the property in a mode effectual to divest the title, and attach it to his equity. This should have been done before the right of innocent parties had intervened. By acquiescence and neglect that right has been lost. We have united to the superior equity, the legal title itself.

2nd. By taking a voluntary confession of judgment from Witherill alone, Neville confined his action under the same, to the separate interest of Wetherill. The bill alledges that this property was purchased by the firm, which was insolvent. Even then upon the supposition that Foster and Virginia participated in the fraudulent scheme charged, there was no *separate interest* in Witherill, which could have been the subject of levy and sale upon this judgment. 18 John. 459. Approved in 2 Mo. 66; 1 Wen. 311; 4 Paige 35.

6. By his deed to Foster, in trust for Mrs. Wetherill, Collins supplied the means of practicing fraud. He and all claiming under him, are estopped from denying, as against an innocent third party, the true import, character, and design of that deed. 4 Mo. 511.

7. Collins was interested to destroy the appellees' title, as in accomplishing this, the covenant running with the same, in the hands of the appellee and still binding on him, would necessarily become extinguished. An interest in the event is decisive of his incompetency.

8. The questions made by the appellants, do not properly arise on this record. During the progress of the hearing, no ground of complaint to the action of the Court appears to have existed on the part of the appellants. No exception was taken, no point of law or fact was distinctly presented to the notice of the Court, and not until four days after the hearing and entry of the decree, do they move for a re-hearing, and the only exception taken is to the overruling of that motion. 7 Mo. 253; 8 ib. 657, 702; 4 ib. 501; Swearingen vs. Newman, 4 Mo. 456.

Scott J., *delivered the opinion of the Court.*

This was a bill in equity, brought by Crockett & Risque, the appellants, against the appellee Maguire. "The bill charges that Witherill & Foster purchased of Charles Collins, two lots of ground in St. Louis, and that for the purpose of defrauding their creditors, they caused Collins to convey said lots to Wm. P. Foster, the father-in-law of Witherill, in trust for the use of Virginia Witherill, the wife of John Witherill, one of the persons above named of Foster & Witherill.

Collins received no part of the purchase money fom Wm. P. Foster, or Virginia Witherill. This deed was dated February 2d, 1839. On the 7th June, 1839, Foster the trustee, and Virginia Witherill, conveyed the lots to Russell Hubbard, and afterwards by several intermediate conveyances, the lots passed to Maguire the appellee  That Maguire, and each of those through whom he derives his title had notice of the fraud committed by Foster & Witherill. That by virtue of a judgment and execution against Witherill in March, 1830, the lots were sold and conveyed to Jas. Neville. This judgment was on a debt of the firm of Foster & Witherill, and was due to Neville, the purchaser of the lots at the Sheriff's sale. In September, 1830, Neville conveyed to Chas. Collins, and during the month following, Collins conveyed to Thomas. In 1836, Thomas re-conveyed to Collins, and by several intermediate conveyances, the lots passed to the appellants. This bill prayed that the deed, under which Maguire the appellee, claimed, might be set aside, and that the possession of the lots be restored to the complainants.

Maguire, the appellee, in his answer admitted the conveyance from Collins to Foster in trust, and that before the conveyance by said trustee and *cestui que trust* to Hubbard, that John Witherill confessed a judgment in favor of said Neville for $1017, upon which judgment an execution was issued against the said Witherill and his interest in the lots sold and conveyed as stated in the bill. Admits the existence of the several conveyances in the bill mentioned, from Neville down to that of the complainants. Admits that he is in possession, and that his title is derived as stated in the bill, and denies all notice of the trust, and of any fraud committed by Witherill in making the purchase from Collins.

To this answer a replication was filed, and the parties went to trial when the complainants bill was dismissed, from which decree he appealed to this Court. Charles Collins, who was a grantor in the claim of title of each party to this controversy, was examined as a witness and gave some testimony conducing to show fraud in the conduct of John Withe-

rill and some of the grantees claiming under William P. Foster, and Virginia Witherill. Some evidence of a like import was given by other witnesses. The testimony of Chas. Collins was objected to. We need not enter into the question of the admissibility of the testimony of Collins, as it entirely fails to establish the fact that the appellee was effected with any notice of the fraud of John Witherill, or that his immediate grantor had any notice of his fraudulent conduct. Nor is the fact of notice established by any other witness.

If then notice cannot be imputed from this source, it remains to be inquired into, whether the record of the sheriff's deed was any notice to purchasers of the lots who acquired them subsequent to its registry.

Collins conveys to Wm. P. Foster in trust for Virginia Witherill, wife of John Witherill, who is in failing circumstances, and who causes the conveyance to be made in that manner in order to defraud his creditors.— Afterwards, but before Foster and Virginia Witherill convey to R. Hubbard under whom the appellee claims, there is a judgment and execution against John Witherill, by virtue of which the lots are sold, and a deed is made and executed. The purchase money having been paid by John Witherill, it may be conceded that a trust resulted to him and that he is in equity the owner of the land, yet on what principle is the record of the sheriff's deed conveying his equity evidence against those claiming under Foster and Virginia Witherill, in whom the legal title is? There is nothing on the registry connecting Jno. Witherill, in any shape, with the title derived from Collins. If it is necessary to examine the sheriff's deed to Neville, conveying John Witherill's equity, then it was equally necessary to examine every deed on record; so it amounts to this, that a person taking land under one grantor would be required to search the record from beginning to end in order to ascertain whether some other other person did not assume to convey the same land. The registry of a deed is only evidence of a notice to after-purchasers under the same grantor. Even if a purchaser was bound to look for conveyances *from* those under whom he claims, as well as *to* them, that he may see if the title has not been diverted from the channel which conveys it to him, yet that principle would not help this case, for as has been observed there is nothing in the record of deeds showing any connexion of John Witherill with the title derived from Collins. This case is said to be analagous to that of Jackson vs. Post, 15 Wend. 589; but upon examination it will be found that there is an obvious distinction between them. In that case Merrick conveyed to his son, and before the son's conveyance was put upon record, there was a judgment and execution against

Merrick, the grantor, under which the land conveyed to the son was sold, and the sheriff's deed recorded. Afterwards the son's deed was recorded, and the purchaser at the sheriff's sale being affected with notice of conveyance to the son, he sold to a purchaser without any other notice than that imported by the registry of the son's deed subsequent to the sale by the sheriff. Under these circumstances, the Court held the son entitled to the land. Now if in the case before the Court, Foster and N. Witherill had been the source of the title of each party to this controversy, the cases would have been parallel, but instead of the parties here claiming under one and the same grantor, they are really claiming under different grantors. Indeed, it may be remarked, that the case of Jackson vs. Post, above cited, is contradicted by the case of Trull vs. Bigelow, 16 Mass. 405. Nor do we consider that the case of Anderson vs. Roberts, 18 John. Rep. 514, in which it was held that when there is a deed fraudulent because made to defraud creditors, and subsequent conveyances are made by the fraudulent grantee and the fraudulent grantor, the title will pass by the subsequent deed, which is first in time, which is analagous to the present one. The plain distinction pointed out between this case and that above cited, of Jackson vs. Post, exists also between the case of Anderson vs. Roberts, and that now under consideration.

Judge NAPTON concurring, the decree will be affirmed.