Ford v. Unity Church Society.

FORD v. UNITY CHURCH SOCIETY, *Appellant.*

Division Two, February 27, 1894.

1. **Will:** DEED: DESCRIPTION OF PREMISES: REJECTION OF PART. A woman to whom land had been devised for life; remainder to her children, made a voluntary deed to a daughter purporting to convey a fee simple in "the one divided fourth" of the land, she having at the time only a life estate, though two years thereafter she acquired the fourth interest of a son which she subsequently conveyed to his wife. *Held*, that the word "divided" would not be rejected for the purpose of removing the uncertainty in the description where the grantee claimed, not that it conveyed her one-fourth free from her mother's life estate, but also the fourth in remainder which her mother subsequently acquired from her brother.

2. **Conveyance:** SUBSEQUENTLY ACQUIRED TITLE: BONA FIDE PURCHASER: CONSTRUCTIVE NOTICE. Under 1 Revised Statutes, 1855, page 355, section 3, which provides that if one make a deed purporting to convey land in fee simple absolute not having the legal estate, such estate on being subsequently acquired by the grantor shall immediately pass to the grantee, a voluntary grantee of one without title can not claim the land against the purchaser from the grantor after acquiring title, both prior deeds having been recorded but the purchaser having no actual notice of the deed of his grantor before acquiring title, the record thereof not being constructive notice.

3. ———: RECORDED DEED: NOTICE. A recorded deed by one who has no title but who afterwards acquires the title by recorded deed is not constructive notice to a subsequent purchaser in good faith from the common grantor.

*Appeal from Buchanan Circuit Court.*—JAMES P. THOMAS, ESQ., Special Judge.

REVERSED.

*M. A. Reed* and *B. R. Vineyard* for appellant.

(1) The description is "the one divided fourth part of," etc. The lands had not then been divided, and

could not have been divided under the fourth clause of the will of James Cargill, until after the death of his widow. On the face of the deed it is impossible to tell which "divided fourth" is meant, and if plaintiff had been permitted to try, and had tried at the trial to locate it, he could not have done so. The ambiguity is a patent one, appearing on the face of the deed, and not susceptible of removal by parol testimony, and renders the deed absolutely void, for uncertainty of description. *Campbell v. Johnson*, 44 Mo. 247; *Goode v. Goode*, 22 Mo. 522; *Bell v. Dawson*, 32 Mo. 79; *Holme v. Strautman*, 35 Mo. 293; *Jennings v. Brizeadine*, 44 Mo. 332; *Hardy v. Matthews*, 38 Mo. 121; *Bradshaw v. Bradbury*, 64 Mo. 334; *King v. Fink*, 51 Mo. 209; *City of Jefferson v. Whipple*, 71 Mo. 519; *Fox v. Courtney*, 111 Mo. 147; *Fued v. Brown*, 41 Ark. 495. (2) Where there is a description on the face of the deed which will apply equally to two or more distinct tracts, the deed is void for uncertainty, and can not be helped out by parol testimony. *Campbell v. Johnson*, 44 Mo. 247; *Brandon v. Leddy*, 67 Cal. 43; *Fuller v. Fellows*, 30 Ark. 657. The court should have sustained defendant's objection to the introduction of this Ford deed in evidence, and, being void, should have sustained defendant's demurrer to plaintiff's evidence, and should have given defendant's first instruction to find for it. (3) The deed of Mrs. Cargill to her daughter, Mrs. Ford, reciting a consideration of one dollar and natural love and affection, could only operate as a deed of gift, and not as one of bargain and sale. *Peck v. Vandenberg*, 30 Cal. 11; *Salmon v. Wilson*, 41 Cal. 595; *Bradley v. Love*, 60 Tex. 472; 1 Devlin on Deeds, sec. 11; *Hatch v. Straight*, 3 Conn. 34. Hence, only the intention of the grantor must be looked for, just the same as that of a testator in a will. *Long v. Timms*, 107 Mo. 512. (4) Where no valuable consideration passes

(and none was shown in this case), a grantor can not be compelled to correct a mistake in a deed, or to carry out an imperfectly executed gift, or to specifically perform a promise, made orally or in writing to make a gift. *Brownlee v. Fenwick*, 103 Mo. 420; *Anderson v. Scott*, 94 Mo. 637; *Dougherty v. Harsel*, 91 Mo. 161; *Goode v. Goode*, 22 Mo. 518; *Sturgis v. Work*, 22 N..E. Rep. 996; *Funk v. Davis*, 103 Ind. 281; *Sherwood v. Sherwood*, 45 Wis. 357; *Young v. Young*, 80 N. Y. 437. (5) The record did not give constructive notice of deeds outside of the chain of title. The registry laws are intended for the protection of subsequent not prior purchasers and creditors. *Dodd v. Williams*, 3 Mo. App. 278; *Crockett v. Maguire*, 10 Mo. 34; *Odle v. Odle*, 73 Mo. 289; *Bates v. Norcross*, 14 Pick. 231; *Jones v. Richardson*, 10 Met. 493; *Co. v. Maltby*, 8 Paige, 361; *Stuyvesant v. Hall*, 2 Barb. Ch. 158; *Calder v. Chapman*, 52 Pa. St. 359; *Burke v. Beveridge*, 15 Minn. 205; *U. S. v. Railroad*, 12 Wall. 365; *Jackson v. Bradford*, 4 Wend. 619.

*James A. Plotner, Hall & Pike* and *Joseph Morton* for respondent.

(1) The description in the deed from Nancy G. Cargill to Abby N. Ford is certain and definite. The rule for construing deeds is: "A deed should be considered as intended to have some effect, and a construction making it operative will be preferred to one rendering it void. Some effect will, if possible, be given to the instrument, for it will not be intended that the parties meant it to be a nullity." 2 Devlin on Deeds, sec. 850. In applying this rule it has been held that "where one part of the description is false and impossible, but by rejecting that a perfect description remains, that part should be rejected and the deed held good and

effectual." 2 Wait's Actions and Defenses, 503; *Tubbs v. Gatewood*, 26 Ark. 128; *Anderson v. Baughman*, 7 Mich. 69; *Gibson v. Bogy*, 28 Mo. 478; *Jamison v. Fopiano*, 48 Mo. 194. (2) The description in the deed then reads, "One-fourth part of," etc., and this means one undivided fourth part. If this be correct the deed is not open to explanation; its terms are plain and have a settled construction and meaning, and this meaning must prevail, and can not be changed by parol evidence. *Jones v. Shepley*, 90 Mo. 307; *Koehring v. Muemminghoff*, 61 Mo. 403; *Murdock v. Ganahl*, 47 Mo. 135; *County v. Wood*, 84 Mo. 489; *Loveplace v. Seal*, 36 Mo. 317; *State ex rel. v. Hoshaw*, 98 Mo. 359; *Morgan v. Porter*, 103 Mo. 135; *Smith v. Fitzgerald*, 9 Atl. Rep. 604; *Rowland v. McCoun*, 26 Pac. Rep. 853; *Evans v. Duncan*, 48 N. W. Rep. 922; *Osgood v. Bander*, 47 N. W. Rep. 1001. (3) The intention of the parties must be derived from the deed itself. *Long v. Timms* 107 Mo. 512; 1 Greenleaf on Evidence, sec. 287. (4) The interest in the lands acquired by Nancy G. Cargill by the deed from Joseph C. Hull, trustee of John C. Cargill, in December, 1865, passed to Abby N. Ford under the deed of Nancy G. Cargill to said Ford, of September 5, 1863, as effectually as if she had possessed said interest on said last mentioned date. (5) The deed from Nancy G. Cargill to Abby N. Ford was duly recorded in the office of the recorder of deeds for Buchanan county, gave constructive notice to all subsequent purchasers, and is binding upon the defendant.

GANTT, P. J.—This is an action of ejectment for the recovery of the south eight feet of lot 6, all of lot 7, and the north two feet of lot 8, all in block 23, in Smith's addition to the city of St. Joseph. The answer admits possession and denied each and every other allegation in plaintiff's petition. The case was

tried to a jury and resulted in a verdict and judgment for the plaintiff.

At the trial plaintiff introduced a patent from the United States to Fred W. Smith, a plat of Smith's addition to the city of St. Joseph and a deed from Smith to James Cargill for lots 3, 4, 5, 6, 7 and 8, all in block 23, of said addition, of which the land sued for is a part.

James Cargill, who is the common source of title, died in 1858, leaving a widow, Nancy G. Cargill, sometimes called Agnes G. Cargill, and four children, George W. Cargill, John C. Cargill, Agnes Owen and Abby N. Ford. James Cargill left a will which was duly admitted to probate in the probate court of Buchanan county by the second clause of which he gave all his estate real and personal to his wife for life, or until she should marry again. Mrs. Cargill, who survived her husband, lived until 1877, when she died without having married again. By the third clause of James Cargill's will, he gave, at the death of his wife, his home place, describing it, to his son, George Cargill, whom he appointed as his executor. By the fourth clause of his will, it was provided that at the death of his wife, his executor should take charge of all his property, real, personal and mixed, and after setting aside said home place to his son George, he should select three disinterested persons to divide all the remainder into four equal parts, and to each of his four children he devised and bequeathed one of these parts thus to be divided.

In 1879, after the death of Mrs. Cargill, the executor selected three persons, who made division of the lands, of which James Cargill died seized, into four parts, and assigned one of these parts to each of the children named in the will, or to their assigns. The report of these commissioners, is too long to be inserted

in this statement.   The lots sued for appear in that part which was assigned to John Cargill and his assign, the Real Estate Loan Company, through which defendant's chain of title runs, being named the assignee of this particular portion.

Prior to this division, and prior to the death of his mother, even as early as 1860, John C. Cargill, in conjunction with his wife, Sarah L. Cargill, conveyed by deed of trust *his interest in all* the real estate which his father owned at his death, to Joseph C. Hull, trustee, to secure the payment of certain debts in said deed of trust described.   Having made default, the trustee, Hull, in 1865 sold and conveyed, under the power conferred by said deed of trust, *all the interest* of John Cargill in said real estate to his mother, Agnes or Nancy G. Cargill.

In 1863, by a deed dated September 5 of that year, Mrs. Cargill, in consideration *of one dollar and natural love and affection*, made a deed containing covenants of warranty, to her daughter, Abby N. Ford, purporting to convey to her *"the one divided fourth part"* of certain described real estate, including said lots 3, 4, 5, 6, 7 and 8, of which the lots sued for are a part.   To the introduction of this deed in evidence by plaintiff, the defendant objected because it was incompetent and irrelevant, because the deed was void, and ineffectual to pass title to any real estate, and because no real estate was described therein.   But the court overruled said objection, and the defendant saved its exceptions.   In fact, defendant objected to the introduction of every instrument, except the patent, the plat and defendant's original answer, read in evidence by plaintiff, on the grounds, among others, that such instruments were irrelevant and incompetent, and saved exceptions to the action of the court in overruling defendant's objections thus made.

After introducing a deed from Mrs. Abby N. Ford to the plaintiff, who is Mrs. Ford's son, and the admission by defendant to the effect that at the death of her father, Abby N. Ford was a married woman, and that she continued to be such until February, 1890, when her husband, Erastus D. Ford, died, the plaintiff rested.

Defendant demurred to plaintiff's evidence, which being overruled, the defendant duly excepted.

The defendant's title, as shown by the deeds introduced in evidence, runs by two chains into Saxton, whence, becoming united, it runs into defendant. One of these chains of title into Saxton, passes from John C. Cargill, by his deed of trust to Joseph Hull, trustee, conveying his fourth, subject to his mother's life estate in the land, and by the trustee's deed from Joseph Hull, trustee, to Mrs. Cargill, and by the warranty deed from Mrs. Cargill to Sarah L. Cargill and by the deed of trust from Sarah L. Cargill to James Hull, trustee, and by the trustee's deed from James Hull, trustee, to the Real Estate and Savings Association, and by the warranty deed from the Real Estate and Savings Association to the Real Estate Loan Company to A. M. Saxton. All these deeds were executed upon valuable considerations.

The other chain of title into Saxton passed from Abby N. Ford, by the deed of trust of herself and husband to Saxton, trustee, and by the trustee's deed from Saxton, trustee, to John D. Richardson, and by the deed from John D. Richardson to Saxton.

By these two chains of title, the defendant contends that two-fourths of the land (the John Cargill fourth and the Abby N. Ford fourth) passed into Saxton, but that if only one-fourth passed into him, it is sufficient to uphold defendant's title.

The chain of title from Saxton to defendant, passed

through the warranty deed from Saxton to Floyd, Ransom and Steinacker, and through the warranty deed from Floyd, Ransom and Steinacker to defendant, the consideration expressed in the former deed being $3,500, and in the latter $4,500.

At the close of the evidence, the court gave three instructions which peremptorily required the jury to find for plaintiff, to all of which defendant objected and excepted. Defendant asked eight instructions embodying its views of the law, all of which were refused and it excepted.

I. The plaintiff's case may be stated in a few words. By the will of his grandfather, James Cargill, an estate for life only was given to his grandmother, Agnes G. Cargill, and a remainder of one-fourth to each of his children at her death. That fourth was to be set off by commissioners to be appointed by his executor. After his grandfather's death on September 5, 1863, his grandmother, who had a life estate in all the lands, made a deed with covenants of warranty to his mother, Mrs. Ford, "in *consideration of natural love and affection and one dollar,*" which purports on its face to convey a fee simple absolute *to the one divided fourth* of the real estate devised by her husband, including the land in controversy. He concedes that at that time no division had been made of James Cargill's lands and none could have been made under his will prior to the widow's death, and that if the deed is to be construed as it is written, it is void for uncertainty, but he invokes the rule that where one part of a description is false and impossible, but by rejecting that part a perfect description remains, that part should be rejected and the deed held good and effectual, and he therefore asks that the word "*divided*" be entirely rejected.

That this court has often, in actions at law, rejected

inconsistent and repugnant clauses in both deeds and wills where their retention was evidently contrary to the intention of the parties, is abundantly attested by its decisions. *West v. Bretelle,* 115 Mo. 653; *Gibson v. Bogy,* 28 Mo. 478; *Rutherford v. Tracy,* 48 Mo. 326. In so doing, however, it was seeking to carry out the intention of the grantor or testator, by a reasonable construction *of the language used.* But in *Campbell v. Johnson,* 44 Mo. 247, while this rule was recognized and approved, it was said: "But if the land granted be so inaccurately described as to render its identity wholly uncertain, then it is admitted the grant is void. *(Boardman v. Reed,* 6 Pet. (U. S.) 328.) * * * The ambiguity must be patent."

Accordingly in that case, where the description in the deed was "the southwest quarter of section eleven, containing forty acres," the court was asked to reject the words "forty acres;" Judge WAGNER said: "This description, by rejecting the quantity of acres, would pass the title to the whole quarter section. That such was not the intention of the maker of the deed is demonstrable, from the fact that one of the other tracts conveyed is the southwest fourth of the same quarter section. * * * To give effect to the deed according to its literal import, the plaintiff would have *eighty acres more than she contracted for.* * * * It is not insisted that the plaintiff bought more than the forty-acre tract sued for in this action. * * * The ambiguity *is patent and can not be removed by the application of extrinsic evidence.*"

Now, if the court had been merely governed by a desire to get a legal description irrespective of the *intention of the grantor, or the right of the case,* nothing would have been simpler than to have rejected the number of acres, and it could have called to its aid the familiar canon that "a call for quantity must give

away to metes and bounds," but, when it was considered that by rejecting those words, the grantor was made *to convey four forty acre* tracts *instead of one,* and his covenants made to convey eighty acres more than he had sold the court wisely left the parties where it found them, and indicated that the place to reform the deed was in equity, where the rights of both could be preserved. See, also, *Jennings v. Brizeadine,* 44 Mo. 332; *King v. Fink,* 51 Mo. 209.

Now, in this case, what will be the effect of rejecting the word *"divided?"* If the deed thereby only conveyed what her mother then owned, or only secured to Mrs. Ford, the daughter, the life estate in the one-fourth of which she owned the remainder, and thereby enabled her to anticipate her father's will, and realize on her share in remainder, it would be at once conceded that it ought to be done; but when it appears that this is not the purpose, but that plaintiff proposes if this patent ambiguity is removed to claim that it conveyed to Mrs. Ford not her one-fourth, free of her mother's life estate, but the fourth in fee simple remainder devised to John Cargill, and subsequently bought in by Mrs. Agnes Cargill under foreclosure sale of John's fourth, it is perfectly evident that a result that never was contemplated by Mrs. Cargill or Mrs. Ford either, will be attained.

That Mrs. Cargill never for a moment considered she had accomplished such a result, is fully evinced by her own warranty deed to Mrs. John Cargill, her son's wife, made after she had purchased his remainder in fee. Putting ourselves in the place of Mrs. Cargill, and understanding that she only had a life estate in this land, and her daughter, Mrs. Ford, a remainder in a fourth of it, and that Mrs. Cargill had three other children, having the same interest, and that Mrs. Cargill did not acquire the title to John Cargill's fourth

interest in remainder for more than two years after the execution of the deed to Mrs. Ford, is it not clear that she had no intention of giving to Mrs. Ford John's share when she should buy it? To reject any part of her deed to reach such a result would be to ignore her intention.

If Mrs. Ford was not satisfied with this description she should have applied to her mother in her life time to correct it, for it is very clear that this deed being a simple gratuity, a court of equity would not have enforced it. *Mulock v. Mulock*, 31 N. J. Eq. 602; Fry on Spec. Perf. of Contracts [2 Ed.], p. 45; *Brownlee v. Fenwick*, 103 Mo. 420; *Anderson v. Scott*, 94 Mo. 637.

But granting that the word "divided" should be rejected from the description and that the deed is construed to convey one "undivided" fourth, the very opposite of what the grantor declared she was conveying, can the claim of plaintiff be sustained, that the subsequently acquired title of Mrs. Agnes Cargill to the fourth devised to her son John, passed to Mrs. Ford by that deed? This claim is based upon the statute as it stood in 1855. "If any person shall convey any real estate, by conveyance, purporting to convey the same in fee simple absolute, and shall not, at the time of such conveyance, have the legal estate in such real estate, but shall afterward acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be valid, as if such legal estate had been in the grantor at the time of the conveyance." (1 R. S. 1855, p. 355, sec. 3.)

This section came under review in *Bogy v. Shoab*, 13 Mo. 365. Judge NAPTON said in that case, in regard to the words *fee simple absolute*: "It then depends upon the character of the deed, whether it is to be affected by our statute. It must be a conveyance, purporting to pass the *fee simple absolute*. * * * The term

fee simple is known at the common law as one which defines the quantity of estate. It is used in contradistinction from a fee tail, a life estate or a term of years. It is evidently not employed in this sense in this provision of the act. It was surely not intended that a quitclaim deed, although the deed uses language to pass the fee, and not any smaller estate, would, therefore, pass *a new title* not belonging to the grantor when he makes the deed. It was hardly intended to apply to a deed conveying *all right, title and interest* of the grantor. Such a deed will undoubtedly pass the land itself, if the grantor has an estate therein, at the time of the conveyance, but it passes no estate which was not then possessed. *Brown v. Jackson*, 9 Wheat. 452. * * * So where a party had a vested interest, and also a contingent remainder in lands, and conveyed 'all his right, title and interest,' the deed was held only to convey his vested interest, although in this case the deed contained a general warranty. * * * *Pell* [*Pelletreau*] *v. Jackson*, 11 Wend. 110." *Valle v. Clemens*, 18 Mo. 486.

In *Brawford v. Wolfe*, 103 Mo. 391, it was held that the doctrine of inurement *whether under the statute* or common law, is raised upon the covenants of title contained in the deed under which it operates, and consequently the deed of a married woman only operated to pass all her existing right, title and interest, citing *Barker v. Circle*, 60 Mo. 259; *Reese v. Smith*, 12 Mo. 348; *Bank v. Robidoux*, 57 Mo. 446.

The common law reason for asserting the title passed by way of estoppel was that it prevented circuity of action, and hence where no right of action ever existed on the covenants and they had been released, extinguished or otherwise closed, some courts held there was no estoppel, and the after acquired estate would not pass.

To this rule, that where no action existed no estoppel.was created, there are, however, a number of well defined exceptions. Among these Mr. Bigelow, in his work on Estoppel [5 Ed.], 445, mentions as a sixth exception to the rule, that, "where the consideration of the grant with warranty was love and affection only."

In *Robinson v. Douthitt*, 64 Texas, 101, the father conveyed to his son for love and affection only. The father had previously mortgaged the land. Under the mortgage it was sold and purchased by a stranger, from whom the father subsequently bought again. The father again sold it to a third person. In a contest between the son and the last purchaser from the father, it was held that the father's purchase from the purchaser under his mortgage inured to the son.

STAYTON, Justice, saying: "We are of the opinion that the estoppel exists in all cases as against a grantor and subsequent purchasers from him *with notice of the prior conveyance*, when a valid conveyance, having such covenants as are found in the deed before us, is executed." Rawle on Covenants for Title [5 Ed.], sec. 257; 3 Washburn on Real Property, 399, 407, and cases cited.

We think the deed in this case must be considered as founded on a consideration of love and affection alone, and that the mere nominal sum of one dollar does not change it into one for bargain and sale. *Hatch v. Straight*, 3 Conn. 34; *Peck v. Vandenberg*, 30 Cal. 11; *Salmon v. Wilson*, 41 Cal. 595; *Bradley v. Love*, 60 Tex. 472; 1 Devlin on Deeds, sec. 11.

But notwithstanding it was a pure donation, if otherwise valid, a subsequent acquired title obtained by Mrs. Cargill would inure, by virtue of its covenants, to Mrs. Ford, and her grantees as against subsequent purchasers of Mrs. Cargill *with notice of said deed*. Conceding then it would carry an after acquired title

as against one having notice, the only notice with which Saxton and his grantees are charged is such as is imparted by our recording acts.

When Mrs. Cargill made the deed September 5, 1863, she had no title to the remainder in the fourth of said lands devised to John Cargill, her son, and construing her deed as not void for uncertainty, it purported to convey a fee simple, but it did not and could not pass John Cargill's fourth until she acquired it in 1865 by the trustee's deed recorded December 4, 1865. On March 4, 1871, by a warranty deed, she conveyed this share of John Cargill so purchased by her to Sarah L. Cargill, his wife, which deed was duly recorded. By mesne conveyance, for value, Saxton became the purchaser of this John Cargill's fourth. Mrs. Nancy Cargill died in 1877. Saxton and all the purchasers subsequent to him, bought after Mrs. Cargill's death.

The question now is, when they came to search the record of conveyances, were they bound to look for deeds by her to this fourth, *antedating her purchase of this land* at the trustee's sale in December, 1865? Perhaps no more important question affecting the title of real estate could be raised than the effect of this doctrine of inurement of after acquired title by estoppel, considered with reference to our recording acts, when rights of innocent purchasers for value, are involved. Some courts hold that: "The obligation created by estoppel not only binds the party making it, but all persons privy to him; the legal representatives of the party, those who stand in his situation by act of law, and all who take his estate by contract, stand in his stead, and are subjected to all the consequences which accrue to him. It adheres to the land, is transmitted with the estate; it becomes a muniment of title, and all who afterwards acquire the title take it subject to the

burden which the existence of the fact imposes on it. These principles had their origin at a very early period in the common law." *Douglass v. Scott*, 5 Ohio, 198; *Knight v. Thayer*, 125 Mass. 25.· Now this language is broad enough, if logically followed, to lead to the result that the after acquired title vested in the grantee, not only as against the grantor and his heirs but as against a subsequent purchaser from the latter of the after acquired title.

Mr. Rawle, who has given the subject a most thorough and rigid analysis, says: This rule, when applied to the case of a *bona fide* purchaser for value without notice, "can not harmonize with the spirit of the registry acts in force in this country, and leads to the position, which certainly can not be considered as tenable, that a purchaser must search the registry of deeds, *not only from the time when his grantor acquired title*, but also for a series of years before that time, in order to discover whether he had previously made any conveyance *(though without title)* to any other person; for if he have, that person will, according to this doctrine, hold the estate as against this purchaser, and if the property has passed through several·hands, a similar search must be made" as to each.    Covenants for Title [5 Ed.], sec. 259.   He says nothing is more simple than what is termed "the line of title."    It is that the first purchaser should search the registry for the deed to his vendor, and trace the title thence back to its source.   If he finds no title in him, as would have been the case here, then it is his fault if he takes the deed.   Now as to the second purchaser, one who buys after the vendor acquires a title.   He searches till he finds the deed to his vendor, and traces the title back to its source.   He finds it regular and *that since his vendor acquired the title* he has not conveyed to any one else.    He is not expected to look for conveyances from

his vendor prior to the time the vendor acquired the title. "Yet," as Mr. Rawle says, "according to the practical effect of the doctrine now being considered, and apart from counter equities, the purchaser, having thus brought himself within all the provisions of the registry laws, is not protected at all if his vendor had, before he acquired title, conveyed to another, with covenants, a title which was without existence or value." *Ibid.*

Judge HARE concurs in Mr. Rawle's views and says in a note to *Duchess of Kingston's Case,* 2 Smith's Leading Cases [8 Ed.], p. 744: "It necessarily tends to give to a vendee who has been careless enough to buy what the vendor has not got to sell, a preference over subsequent purchasers who have expended their money in good faith and without being guilty of negligence."

In *Crockett v. Maguire,* 10 Mo. 34, Judge SCOTT said, "The registry of a deed is only evidence of a notice to after purchasers under the same grantor."

In *Dodd v. Williams,* 3 Mo. App. 278, the St. Louis court of appeals held that an examiner of titles was not bound to examine for deeds of any person in the chain of title before the date of his record title.

In *Calder v. Chapman,* 52 Pa. St. 359, Judge READ said: "It is said that, 'if a man sells and conveys land to which he has no right or title, and afterwards buys or acquires the title to the same land, he can not claim it as against his grantee;' and, whether this rule is based on estoppel or rebutter, or upon the equity as practiced in Pennsylvania, by which that which ought to be done is considered as done, is perhaps immaterial, as the effects of our recording acts must be the same in either case. * * * 'It is a doctrine * * * when properly understood and applied, that concludes the truth in order to prevent

fraud and falsehood, and imposes silence on a party only where, in conscience and honesty, he should not be allowed to speak.' Now, in the present case, in searching for incumbrances or conveyances, the search against Calder would begin with his title from Chapman, and the search beyond would be against Chapman and those through whom he claimed; and a search against Calder during the same period would be considered an utter absurdity.''

In *Ely v. Wilcox*, 20 Wis. 523, it is said: ''In Massachusetts it is held that in searching the title it is not necessary to search the record, as against an antecedent grantor of the land, further than the registry of a deed duly executed by him, and that when such a deed has been registered, a purchaser under the grantee will not be affected with notice of a prior deed recorded subsequently but before the period of his purchase. *Connecticut v. Bradish*, 14 Mass. 296; *Trull v. Bigelow*, 16 Mass. 418; *Somes v. Brewer*, 2 Pick. 184.'' And the Massachusetts rule is approved by the Wisconsin court. *Odle v. Odle*, 73 Mo. 289; 2 Pom. Eq. Juris., sec. 658.

Our conclusion is, that a recorded deed by one who has no title, but who afterwards acquires the title by recorded deed, is not constructive notice to a subsequent purchaser in good faith from the common grantor. We think, when he searches till he finds the deed by which his grantor acquires the title, he is not bound to look for deeds made prior to that time. Such prior deeds are not ''in the line of title,'' as that term is used by conveyancers and searchers.

When Saxton and those who claimed under him bought, Mrs. Agnes Cargill was dead. The fourth they bought on the face of the deed purported to be *John Cargill's fourth*. That fourth was conveyed to Sarah Cargill by Mrs. Agnes Cargill. Looking back,

then, they would discover that John Cargill's fourth was sold to his mother in December, 1865. The mother was dead. Were they required to look back of the time she acquired John's fourth to see whether she had deeded it to Mrs. Ford, in 1863? We think not.

But plaintiffs claim, that, admitting the rule to be as we think it most clearly should be, still Mrs. Sarah Cargill was bound to look back and see whether Mrs. Agnes Cargill had not conveyed *her life estate* in John's share which she was conveying to her. For several reasons we think this will not avail plaintiff. *First.* There are no words in the deed of 1863 to Mrs. Ford that in any manner indicate that Mrs. Agnes Cargill had the slightest intention of conveying the John Cargill share at that time, and as she was conveying only one fourth out of four, and as she had no title to John's share, there was nothing in that deed which would carry notice as to her life estate in John's share. *Gatewood v. House*, 65 Mo. 663. But more than that, John Cargill, by his father's will, only took *a fourth in remainder*. He only mortgaged *a fourth in remainder*. His mother only bought what he mortgaged, and by her deed, she only conveyed *what she purchased at that sale*, so that her life estate was not involved in the examination, and we must hold that the subsequent purchasers were unaffected by Mrs. Ford's deed, even if it were not void for uncertainty.

The plaintiff and his mother have paid no taxes on this land since obtaining the deed in 1863, have asserted no title, and his claim is wholly without merit. The judgment of the circuit court is reversed. All concur.